IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

No. 5:14-CT-3298-F

HENRY J. STEELE,
    Plaintiff,

v.

CLARENCE LEE FAULCON and PETER B. WOGLOM,
    Defendants.

**ORDER**

This matter is before the court on Defendants' motions for summary judgment [DE-53, -105]. For the following reasons, Defendants' motions are ALLOWED.

**I. Statement of the Case**

On December 1, 2014[1], Plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that Defendants were deliberately indifferent to his serious medical needs [DE-1]. Plaintiff's complaint survived frivolity review, and the Clerk of Court was directed to continue management of Plaintiff's claims [DE-13].

Defendants Donald Mobley[2] and Caroline Taylor filed a motion to dismiss Plaintiff's claims against them, and it was allowed on August 30, 2016 [DE-94]. On February 29, 2016, this court allowed Plaintiff's motion to amend his complaint, and the Clerk of Court was directed to add Defendant Woglom to this action [DE-45]. Defendants Faulcon and Woglom filed separate motions for summary judgment on March 23, 2016 and November 15, 2016, respectively

---

[1] On December 8, 2014, Plaintiff filed a corrected complaint in response to a notice of deficiency [DE-8].

[2] Plaintiff incorrectly identified this Defendant as "Arnold Mobley" [DE-38].

[DE-53, -105]. Plaintiff has responded to both motions [DE-65, -116], and both Defendants have replied [DE-71, -120]. In this posture, these matters are ripe for adjudication.

## II. Statement of the Facts

In his remaining claims, Plaintiff alleges that while he was incarcerated at Bertie Correctional Institution ("Bertie")[3], Defendants Faulcon[4] and Woglom were deliberately indifferent to his serious medical needs. In particular, Plaintiff contends that he has been denied medication necessary to control his hypertension. Compl. [DE-8], p. 3; Am. Compl. [DE-18-1], p. 1. Plaintiff also contends that Defendant Woglom has failed to examine him despite Plaintiff's frequent complaints about numerous chronic health conditions. Am. Compl. [DE-18], pp. 1-2.

Defendant Woglom is a licensed physician's assistant who, during the time period relevant to Plaintiff's complaint, was employed by the North Carolina Department of Public Safety ("DPS"). Woglom Aff. [DE-107-1] ¶ 2. Defendant Woglom provided care for Plaintiff between August 27, 2014, the date of Plaintiff's arrival at Bertie, until June 11, 2015, when Defendant Woglom assumed different duties within DPS. Id. ¶ 5.

Plaintiff was examined by a nurse on September 2, 2014 and requested the renewal of health restrictions that were in place prior to his transfer to Bertie. Id. ¶ 8. He also complained of

---

[3] Plaintiff is currently incarcerated at Lanesboro Correctional Institution. See N.C. Dep't of Corr.,http://webapps6.doc.state.nc.us/opi/viewoffender.do?method=view&offenderID=0478100&searchOffenderId=0478100&listurl=pagelistoffendersearchresults&listpage=1 (last visited March 14, 2017).

[4] Defendant Faulcon is a physician who was employed by the North Carolina Department of Public Safety at the time relevant to Plaintiff's complaint. Compl. [DE-8], p. 5. Plaintiff's sole allegation against Defendant Faulcon is that he "was the doctor who was supposed to order my [blood pressure] medication and did not." Id. Accordingly, the review of the medical record primarily focuses on the actions of Defendant Woglom.

2

a mass in his throat and sought further examination by a physician or a physician's assistant. Id. During the examination, Plaintiff stated that he was steadily losing weight. Id. Plaintiff's vital signs were normal, but the nurse noted that Plaintiff had lost sixteen pounds since his last examination. Id. Plaintiff was advised that his health restrictions were still active, and his other health concerns would be referred to a physician's assistant for review. Id.

Defendant Woglom reviewed Plaintiff's medical chart on September 5, 2014. Id. ¶ 9. Defendant Woglom renewed several of Plaintiff's prescriptions. Id. However, Defendant Woglom declined to renew Plaintiff's prescriptions for treating hemorrhoids because Plaintiff no longer had any complaints with regard to that condition. Id. Likewise, Defendant Woglom declined to renew several medications because they had not yet expired. Id. Finally, Defendant Woglom took steps to ensure that Plaintiff's throat mass would be examined by an ear, nose, and throat ("ENT") specialist. Id. The ENT consultation was approved on September 15, 2014 and scheduled for October 2, 2014. Id. ¶ 10.

On October 1, 2014, Defendant Woglom changed Plaintiff's prescription for a nasal allergy spray from Flunisolide to triamcinolone, based on a DPS policy decision to phase out Flunisolide. Id. ¶ 11.

Plaintiff was examined by an ENT physician on October 2, 2014. Id. ¶ 12. The ENT performed a scope examination of Plaintiff's throat, which revealed pashremcoid edema consistent with acid reflux. Id. Plaintiff was prescribed a medication to reduce his acid reflux, and a mouthwash to control his throat discomfort. Id. Finally, the ENT physician recommended Plaintiff undergo a CT scan of his neck and return for a follow-up afterward. Id. Defendant Woglom reviewed the notes from Plaintiff's ENT consultation and entered the appropriate orders

3

to ensure that Plaintiff received the prescribed medication. Id. ¶ 13. Defendant Woglom also entered an order requesting a CT scan of Plaintiff's neck. Id. ¶ 14. This request was approved, and Plaintiff was scheduled for a CT scan on October 30, 2014. Id.

On October 14, 2014, Plaintiff was examined by a nurse in response to his complaints of back pain and numbness in his right leg and hand. Id. ¶ 15. Plaintiff also requested further adjustment to his health restrictions and the renewal of various prescriptions. Id. In addition, Plaintiff voiced a general concern that his medical needs were being overlooked and that Nash was not properly equipped to care for him. Id. Upon examination, Plaintiff's vital signs were normal and he was asymptomatic. Id. Based on Plaintiff's complaints, the nurse referred him to a DPS physician. Id. The examining nurse also offered Plaintiff pain medication for his back, but Plaintiff declined the medication. Id.

Defendant Woglom examined Plaintiff again on October 22, 2014. Id. ¶ 16. Plaintiff was in no apparent distress, his neck had a normal range of motion, and his head, ears, throat, lungs and heart were normal. Id. He was diagnosed with chronic back pain and a history of a gunshot wound with associated neuropathy of his right lower extremity. Id. Following this examination, Defendant Woglom renewed Plaintiff's expired prescriptions. Id. Defendant Woglom also did the following: (1) ordered an x-ray of Plaintiff's spine; (2) prescribed an oral analgesic for Plaintiff's throat pain; (3) ordered routine monitoring of Plaintiff's blood pressure; and (4) ordered various diagnostic tests, including a complete metabolic panel and an erythrocyte sedimentation rate test. Id. The results of the diagnostic tests ordered by Defendant Woglom arrived on November 5, 2014. Id. With the exception of Plaintiff's LDL cholesterol level, which was slightly elevated, the results were all within normal limits. Id. In Defendant Woglom's medical opinion, Plaintiff's

4

slightly elevated LDL cholesterol level did not require treatment. Id.

Plaintiff underwent an x-ray of his cervical spine on October 27, 2014. Id. ¶ 18. The radiologist reported that Plaintiff demonstrated a loss of the normal lordotic curvature of his spine. Id. In addition, the transverse processes of C7 were prominent. Id. The x-ray was otherwise largely normal and unremarkable. Id. The radiologist opined that the straightening of Plaintiff's spine might be due to hyperextension or hyperflexion injury. Id. Likewise, the radiologist opined that the prominent transverse process of C7 might cause thoracic outlet syndrome. Id.

On October 30, 2014, Plaintiff underwent a CT scan of his neck and larynx. Id. ¶ 19. The results were normal and unremarkable. Id. Defendant Woglom reviewed the results of the CT scan on November 6, 2014, and made arrangements for Plaintiff to receive his follow-up ENT consultation. Id. ¶ 20. The ENT follow-up consultation was scheduled for January 9, 2015. Id.

Plaintiff was examined by a nurse on November 10, 2014, following complaints that his prescription for Nasacort had only been ordered for a duration of one month. Id. ¶ 21. Plaintiff's vital signs were normal, and his medication request was forwarded to Defendant Woglom for further review. Id. Defendant Woglom reviewed Plaintiff's chart on November 12, 2014, and extended the duration of Plaintiff's Nasacort prescription to one year. Id. ¶ 22.

On December 14, 2014, Plaintiff was examined for a painful wet and dry cough. Id. ¶ 23. He requested a cough suppressant and a decongestant. Id. Plaintiff also indicated that Nasacort was not properly controlling his rhinitis, and he sought a stronger allergy medication. Id. Plaintiff complained of back pain and inquired why his pain medication had not been renewed. Id. Finally, Plaintiff requested the results of his x-rays and other diagnostic tests. Id. Upon examination, Plaintiff's vital signs were normal, and he had a non-productive cough. Id. In

5

addition, Plaintiff was notified that his pain medication, Naproxen, had already been renewed on September 5, 2014. Id. Plaintiff then stated that his back pain persisted despite his use of pain medication. Id. Plaintiff was prescribed cough syrup, and his other requests were referred to Defendant Woglom. Id.

Defendant Woglom reviewed Plaintiff's medication requests on December 19, 2014. Id. ¶ 24. Per Plaintiff's request, Defendant Woglom discontinued Plaintiff's prescription for chloraseptic. Id. Plaintiff was instead instructed to gargle with salt water up to four times a day. Id.

Plaintiff was examined by the ENT physician again on January 8, 2015. Id. ¶ 25. The ENT doctor noted that Plaintiff's CT scan did not demonstrate any concerning features. Id. The ENT doctor recommended various prescriptions and indicated that further follow-up was not necessary. Id. Defendant Woglom reviewed the ENT doctor's notes on January 9, 2015, and prescribed Nasacort and Prilosec for Plaintiff based on the ENT doctor's recommendations. Id. ¶ 26.

On January 19, 2015, Plaintiff was examined by a nurse in response to a complaint that he had a draining cyst on his forehead. Id. ¶ 27. After examining Plaintiff, the nurse diagnosed him with a risk of infection and referred Plaintiff to the sick call list for further evaluation of the cyst. Id. Plaintiff was provided with ibuprofen for his pain and instructed to frequently wash the affected area. Id. Plaintiff was also instructed to apply a warm compress to the affected area. Id.

Defendant Woglom was contacted via telephone about Plaintiff's cyst on January 21, 2015. Id. ¶ 28. Defendant Woglom prescribed Plaintiff an antibiotic and also ordered a bacterial culture of any drainage from the cyst. Id. The results of the bacterial culture were reviewed by

6

Defendant Woglom on January 27, 2015, and, as a result, Defendant Woglom prescribed Bactrim DS. Id. ¶ 29.

Plaintiff was examined by a nurse on January 29, 2015, following complaints that he had not yet received his Nasacort or Prilosec. Id. ¶ 30. He also requested the renewal of several other medications, and again sought the results of his x-rays. Id. Finally, Plaintiff requested an extra mattress due to his back pain. Id. Plaintiff's vital signs were normal and he was in no apparent distress. Id. Plaintiff's complaints were forwarded to Defendant Woglom for further review. Id.

On February 10, 2015, Plaintiff was examined by a nurse again. Id. ¶ 32. During this examination, Plaintiff repeated his complaints from the January 29, 2015 examination. Id. He also complained of back pain, numbness in his right leg and hand, and a problem with a hernia. Id. Plaintiff's vital signs were normal, and he did not exhibit any signs or symptoms indicative of a hernia. Id. Plaintiff was again referred to Defendant Woglom for further review. Id.

Defendant Woglom renewed several of Plaintiff's medications on February 23, 2017 and February 24, 2015. Id. ¶¶ 33-34. These renewals specifically included a continuation of the medications used to treat Plaintiff's high blood pressure: Norvasc and Atenolol. Id. In addition, on February 24, 2015, Defendant Woglom entered an order requesting an x-ray of Plaintiff's lumbar spine. Id. ¶ 34. The x-ray of Plaintiff's lumbar spine was scheduled for March 2, 2015. Id. Finally, because Plaintiff had not demonstrated any objective symptoms of a hernia, Defendant Woglom decided that Plaintiff did not require any further treatment for that condition. Id. Plaintiff underwent the x-ray of his lumbar spine on March 2, 2015. Id. ¶ 35. The radiologist indicated that the x-ray was normal. Id.

On March 4, 2015, Defendant Woglom reviewed Plaintiff's medical records, including

7

the results of the lumbar spine x-ray. Id. ¶ 36. After this review, Defendant Woglom entered an order for Plaintiff to receive a nutritional assessment for the purpose of renewing his assigned diet. Id. The assessment took place on March 11, 2015. Id. ¶ 38. Plaintiff's hypertension medications were reviewed, and it was noted that Plaintiff had some elevated blood pressure readings. Id. It was recommended that Plaintiff do the following: (1) continue with a 2,500 calorie diet for one year; (2) regularly exercise as tolerated; and (3) continue to have his weight, blood pressure, and heart rate regularly monitored. Id.

Plaintiff was also examined on March 4, 2015 to review the results of his lumbar spine x-ray. Id. Plaintiff was not in any distress, and he could easily sit, stand, and ambulate. Id. Plaintiff was advised to continue taking his prescribed nonsteroidal anti-inflammatory medications for his chronic back pain. Id. However, the examining physician also determined that a second mattress was not medically necessary for Plaintiff. Id. The examining physician took steps to have Plaintiff's current mattress replaced. Id. Finally, during this examination, Plaintiff did not complain of any hernia symptoms. Id. On March 23, 2015, Plaintiff was examined by a nurse, complaining that his hernia symptoms were worsening. Id. ¶ 39. Upon examination, Plaintiff's blood pressure was elevated, but his vital signs were otherwise normal. Id.

Plaintiff was examined on April 2, 2015 for a routine assessment of his hypertension. Id. ¶ 40. Plaintiff's vital signs were normal, including his blood pressure, and he did not have any other complaints. Id. The examining nurse noted that Plaintiff was still taking Norvasc and Atenolol to manage his blood pressure. Id. Plaintiff was referred to Defendant Woglom for review of his medication regimen. Id. Defendant Woglom reviewed Plaintiff's records on April 6, 2015, and determined that no changes needed to be made to Plaintiff's medications. Id.

On May 14, 2015, Plaintiff was examined by a nurse as part of a routine health screening. Id. ¶ 41. Plaintiff's vital signs, including his blood pressure, were normal. Id. Plaintiff's only complaints related to pain in his back, neck, and legs. Id. He did not complain of any hernia issues or otherwise report any symptoms consistent with a hernia. Id. ¶ 41.

Plaintiff was examined by a nurse again on May 16, 2015. Id. ¶ 42. During this examination, Plaintiff requested a stronger medication for treatment of his blood pressure. Id. He also stated that his hernia was painful. Id. Upon examination, Plaintiff's vital signs were normal, including his blood pressure. Id. The examining nurse did not document any objective findings of pain related to a hernia in her examination notes. Id.

Defendant Woglom reviewed Plaintiff's medical records on May 19, 2015. Id. ¶ 43. Based on Plaintiff's inconsistent blood pressure readings, Defendant Woglom suspected Plaintiff was not compliant with his blood pressure medication. Id. Accordingly, Defendant Woglom instructed a nurse to perform a pill count of Plaintiff's blood pressure medication. Id. Because Plaintiff's recent blood pressure readings were normal, Defendant Woglom determined that there was no need to change Plaintiff's medications. Id. Defendant Woglom also renewed Plaintiff's allergy medications. Id. Finally, because Plaintiff still had not demonstrated any objective symptoms of a hernia, Defendant Woglom determined that further examination was not medically necessary. Id.

### III. Discussion

Summary judgment is appropriate when, after reviewing the record taken as a whole, no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). The

9

party seeking summary judgment bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 325. Once the moving party has met its burden, the nonmoving party may not rest on the allegations or denials in its pleading, Anderson, 477 U.S. at 248-49, but "must come forward with specific facts showing that there is a genuine issue for trial," Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (emphasis removed) (quotation omitted). A trial court reviewing a motion for summary judgment should determine whether a genuine issue of material fact exists for trial. Anderson, 477 U.S. at 249. In making this determination, the court must view the evidence and the inferences drawn therefrom in the light most favorable to the nonmoving party. Scott v. Harris, 550 U.S. 372, 378 (2007).

Section 1983 provides that "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States . . . to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured." 42 U.S.C. § 1983. Ordinarily, to establish a claim under § 1983, a plaintiff most prove: (1) he was deprived of a right secured by the Constitution or laws of the United States, and (2) the alleged deprivation of rights was committed under color of law. American Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 59-60 (1999).

In order to prove a deliberate indifference claim, Plaintiff "must demonstrate that the officers acted with 'deliberate indifference' (subjective) to [his] 'serious medical needs' (objective)." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)). Unless medical needs were serious or life threatening, and the defendants

10

were deliberately and intentionally indifferent to those needs of which he was aware at the time, a plaintiff may not prevail. Estelle, 429 U.S. at 105. A prisoner is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318–19 (4th Cir. 1975) (per curiam). Likewise, mere negligence in diagnosis or treatment does not state a constitutional claim. Estelle, 429 U.S. at 105–06.

Plaintiff has not established a claim for deliberate indifference to a serious medical need. During the time period relevant to his complaint, Plaintiff was personally examined by Defendant Woglom. Woglom Aff. [DE-107-1] ¶ 47. Defendant Woglom reviewed Plaintiff's medical records and test results at least fifteen times, and he also gave telephone orders so that treatment could be provided to Plaintiff. Id. Furthermore, Defendant Woglom submitted several requests for Plaintiff to be referred for diagnostic testing or for consultations with specialists. Id. Plaintiff's blood pressure, and other chronic health concerns, were monitored closely by Defendants and other DPS officials at all times relevant to Plaintiff's claims. Id. ¶¶ 16, 27, 33, 37, 38, 39, 40, 41, 42, 43, 44, 47. Plaintiff's blood pressure medications were renewed after they expired, and there is no indication Defendant Faulcon intentionally refused to refill a valid prescription. Id. ¶¶ 33, 40, 43, 47. Moreover, Defendant Woglom chose not to further examine Plaintiff's complaints regarding a hernia because Plaintiff never presented any objective symptoms of suffering a hernia. Id. ¶ 5, 16, 32, 34, 38, 39, 41, 42, 43, 47. More generally, Defendant Woglom responded to all of Plaintiff's numerous medical complaints and prescribed medications to treat each of these conditions. Id. ¶ 47.

Therefore, it is clear plaintiff has received medical treatment for his medical conditions. An inmate is not entitled to unqualified access to health care and treatment may be limited to

11

what is medically necessary and not "that which may be considered merely desirable" to the inmate. Bowring v. Godwin, 551 F.2d 44, 47–48 (4th Cir.1977). Likewise, "[d]isagreements over medications, diagnostic techniques, forms of treatment, the need for specialists, and the timing of their intervention implicate medical judgments and not the Eighth Amendment." Jordan v. Fischer, 773 F. Supp. 2d 255, 276 (N.D.N.Y. 2011); see Estelle, 429 U.S. at 105-06. Plaintiff's claims essentially amount to a disagreement in the course of treatment prescribed by Defendants, and allegations of negligence. Indeed, on the face of his complaint, he couches his claims in terms such as "medical negligence" and a failure to provide the "appropriate standard of care." Compl. [DE-8], p. 5. For these reasons, Defendants' motions for summary judgment [DE-53, -105] are ALLOWED, and Plaintiff's claims are DISMISSED.

## IV. Conclusion

For the aforementioned reasons, Defendants' motions for summary judgment [DE-53, -105] are ALLOWED, and Plaintiff's claims are DISMISSED. Plaintiff's pending motion to compel [DE-103] is DENIED as moot. The Clerk of Court is DIRECTED to close this case.

SO ORDERED.

This the _15_ day of March, 2017.

*James C. Fox*
JAMES C. FOX
Senior United States District Judge